UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RANDALL THOMAS HOLLOWAY,           )
                                    )
          Plaintiff,                )
                                    )
v.                                  )          No.:   3:14-CV-131-TAV-CCS
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social Security,  )
                                    )
          Defendant.                )

## MEMORANDUM OPINION

This civil action is before the Court on plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 10, 12] and defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13, 14]. Plaintiff Randall T. Holloway seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On May 6, 2011, plaintiff protectively filed a Title II and Title XVIII application for disability insurance benefits with the Social Security Administration with an alleged onset date of January 1, 2011 [Tr. 82–85, 138]. The Social Security Administration denied plaintiff's application initially and upon reconsideration [Tr. 40–42, 48–49]. Plaintiff timely filed a request for a hearing, and he appeared before Administrative Law Judge Joan Lawrence on August 9, 2012, in Knoxville, Tennessee [Tr. 23, 37–39]. The ALJ issued an unfavorable decision on November 15, 2012 [Tr. 7–22]. Plaintiff

requested review of the decision, which the Appeals Council declined on February 26, 2014 [Tr. 1–6].

Having exhausted his administrative remedies, plaintiff filed a complaint with this Court on March 31, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act [Doc. 2]. The parties have filed competing dispositive motions, and this matter is ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

1  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: obesity and degenerative disc disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform *light work* as defined in 20 CFR 404.1567(b) except the claimant can perform frequent climbing, balancing, stooping, kneeling, crouching and crawling.

6. The claimant is capable of performing past relevant work as an assistant apartment manager (DOT 186.167-018). This work does not require the performance of work-related

2

activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 12–19].

## II. DISABILITY ELIGIBILITY

To qualify for disability insurance benefits, plaintiff must file an application and pass the five-step sequential evaluation outlined below. 20 C.F.R. § 404.1520. "Disability" is the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

3

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir.

4

2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

5

541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Id.* at 546–47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    EVIDENCE

### A.    Medical Evidence

On May 6, 2011, plaintiff protectively filed an application for disability benefits with an alleged onset date of January 1, 2011 [Tr. 82–85, 138]. Plaintiff was born on August 7, 1967, and reported past relevant work as an apartment manager, laborer, furniture installer, cable television collections manager, and salesperson [Tr. 84, 100]. His alleged impairments included back and left hip pain, degenerative arthritis, sciatic nerve, deep vein thrombosis, varicose veins and phlebitis, and severe swelling [Tr. 89].

Plaintiff sought treatment from Dr. Scott McLain of Horizon Family Medicine for back pain in 2009 [Tr. 233–40]. He continued to see Dr. McClain through September

6

2010 for low back pain, and Dr. McClain prescribed Roxicodone and Soma for pain management [Tr. 168–70]. Plaintiff reported that the pain started approximately five years prior to his September 2010 appointment and he did not recall any precipitating event or injury that caused his low back pain [Tr. 168].

Plaintiff received treatment for chronic back pain at Bearden Healthcare beginning in September 2010 [Tr. 253–58]. He complained of back pain, arthritis, headaches, hip pain, hypertension, and gastro esophageal reflux disease [Tr. 254]. Plaintiff reported visiting previous pain clinics, including Tennessee Pain Professionals, and stated that he "got kicked out" because he alleged that his medications were stolen and visited another doctor to secure additional pain medications [Tr. 255]. He was prescribed Percocet, Baclofen, and Mobic [Tr. 253]. He returned to Bearden Healthcare in October 2010 for low back and hip pain [Tr. 249–52]. Plaintiff reported that his pain level, on a scale of one to ten, was between seven and eight without medication and six with medication [Tr. 249]. He was diagnosed with mild degenerative disc disease and mild disc space narrowing and given refill prescriptions for his pain medication with the addition of Roxicodone and Soma [Id.]. Plaintiff reported similar symptoms and received the same diagnosis and treatment plan in November 2010 [Tr. 246].

Plaintiff sought treatment at Blount Pain Consultants from September through May 2011 [Tr. 280–95]. Plaintiff stated that he did not engage in much activity due to his back pain and that his pain medications, walking with a cane, and sleeping in a recliner seemed to help his symptoms [Tr. 294]. He had a slight limp in his gait but was

7

able to maintain steady balance with the use of a cane to ambulate [*Id.*]. Plaintiff's Roxicodone prescription was decreased, and he was notified that he would no longer receive Soma refills after the May 2011 prescription [*Id.*]. In June 2011, plaintiff again ambulated with a slight limp but without the assistance of a cane [Tr. 290]. In July 2011, plaintiff's musculoskeletal exam revealed "all extremities grossly normal tone and muscle strength. Lumbar spine with generalized point tenderness, increased tenderness to midline spine . . . pain reproduced in all planes" [Tr. 287]. An x-ray and MRI were taken on September 23, 2010, and revealed "mild degenerative changes" and "mild disc space narrowing at L5-S1" [Tr. 277, 280].

Dr. Jeffrey Summers conducted a physical evaluation on July 25, 2011 [Tr. 297–98]. Plaintiff reported pain in his back and left leg for the past two to three years [Tr. 297]. He had flexion at the waist to seventy degrees, extension at the waist to fifteen degrees, and lateral flexion at the waist to twenty degrees left and twenty degrees right [*Id.*]. Dr. Summers noted that plaintiff ambulated in a "normal manner with an upright posture. He utilizes the assistance of a single hand cane, but does not appear to be dependent on it" [*Id.*]. Dr. Summers assessed that plaintiff would have "difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 lbs" due to "a decrease in ROM at his lumbar spine" [Tr. 298]. He found that plaintiff "should tolerate all other work related activities in this regard" [*Id.*].

Dr. Marcia Turner submitted a physical RFC assessment in August 2011 and found that plaintiff could lift and carry fifty pounds occasionally, twenty-five pounds

8

frequently, and could stand, walk, and sit for approximately six hours in an eight-hour workday [Tr. 300]. She noted that his ability to push and pull was unlimited and assessed that plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl [Tr. 300–01]. Based on her consideration of the "longitudinal evidence," Dr. Turner gave Dr. Summers's assessment only moderate weight [Tr. 305].

Dr. Phillip J. Haggerty of Anesthesiology and Pain Management Consultants, Inc., began treating plaintiff in August 2011 [Tr. 309–11]. Dr. Haggerty referred to the MRI results from September 2010 revealing "only mild narrowing at L5-S1" [Tr. 309], and found that plaintiff had a "grossly normal gait" and "full range of motion of cervical spine, lumbar spine, and all 4 extremities . . . [p]alpitation of his lumbar back reveals generalized muscle tension with a mild to moderate point of maximal pain left lumbar paramedian" [Tr. 311]. Dr. Haggerty diagnosed low back pain with radiation and continued plaintiff on his medications [*Id.*]. In September 2011, plaintiff returned to Dr. Haggerty for prescription refills and to follow up on his lower back pain [Tr. 312]. Plaintiff reported that his daily activities and personal relationships were impaired by his back pain and that his decreased "life enjoyment" caused him agitation, anxiety, anger, and loss of concentration [*Id.*]. However, plaintiff stated that his symptoms did not affect his ability to "feed himself, prepare meals, bathe, dress and/or perform personal hygiene tasks" [*Id.*]. Dr. Haggerty noted again that plaintiff had a "grossly normal gait" and prescribed a walker to address plaintiff's "unstable standing" [Tr. 313–14].

Dr. James Gregory submitted a physical assessment on October 26, 2011, adopting Dr. Turner's assessed RFC [Tr. 315]. He noted plaintiff's walker prescription "submitted by attorney, with no medical records attached" [*Id.*]. Dr. Gregory stated that "[w]ithout supporting evidence this prescription cannot be given any weight" [*Id.*].

Dr. Haggerty submitted a medical source statement on May 16, 2012 [Tr. 316–19]. He assessed that plaintiff could lift and carry up to five pounds, could stand or walk less than two hours in an eight-hour workday, could sit less than six hours in an eight-hour workday, and was limited in his ability to push and pull in both upper and lower extremities [Tr. 316–17]. Dr. Haggerty stated that plaintiff could never climb, balance, kneel, crouch, crawl, or stoop and explained that plaintiff's "conditions are multiple and increasing. The nerve damage and spasms will likely continue and progress the rest of his life. Any increased physical activity would likely further aggravate his condition, with worsening pain" [*Id.*]. He further assessed that plaintiff could only occasionally reach, handle, finger, and feel, and he noted that cold temperatures and humidity increased his symptoms and "any attempt to run machinery would not be advised, this would greatly aggravate his conditions" [Tr. 318–19].

Plaintiff subsequently submitted additional records from Dr. Haggerty dated November 2011 through January 2013 to the Appeals Council [Tr. 1–4, 326–75]. During these examinations, plaintiff consistently reported lower back and joint pain eased by pain management and medication [Tr. 326–75]. Physical examinations showed a "grossly normal gait" and normal range of motion [Tr. 332, 335, 338–39]. Dr. Haggerty

10

noted that plaintiff walked with a cane and that his range of motion was normal but limited by pain [Tr. 344]. Dr. Haggerty continued plaintiff on pain medication and advised him to exercise and maintain a regular routine [Tr. 326–75].

### B. Other Evidence

The ALJ conducted a hearing on August 9, 2012, in which plaintiff testified [Tr. 23–34]. Before the hearing began, the ALJ asked plaintiff's counsel if he anticipated the addition of any other exhibits, to which plaintiff's counsel responded, "I do not, Your Honor" [Tr. 25]. The ALJ issued an unfavorable decision on November 15, 2012 [Tr. 7–22]. The ALJ assigned little weight to Dr. Haggerty, significant weight to Dr. Summers, and "less weight" to Dr. Turner [Tr. 17]. The ALJ further found that plaintiff could perform his past work as an assistant apartment manager, and alternatively, that there were significant jobs in the national economy that plaintiff could perform [Tr. 17–18].

## V. POSITIONS OF THE PARTIES

Initially, plaintiff argues that neither the ALJ nor the Appeals Council reviewed the complete record and that several exhibits were erroneously excluded from the transcript. Plaintiff briefly references the Listings, specifically claiming that he satisfies Listing 1.00 due to his alleged inability to ambulate without assistance. Plaintiff further contends that the ALJ's RFC assessment is not supported by substantial evidence. Specifically, plaintiff claims that the ALJ improperly weighed the medical evidence and failed to assign proper weight to plaintiff's treating physician, Dr. Haggerty.

11

The Commissioner responds that the additional exhibits submitted to the Appeals Council do not warrant remand because the evidence is immaterial and plaintiff cannot show good cause for not submitting the records during the administrative hearing. The Commissioner argues that plaintiff failed to demonstrate that he met the criteria for a listed impairment. The Commissioner further answers that substantial evidence supports the ALJ's RFC determination and that she properly weighed the medical evidence of record, including Dr. Haggerty's medical source statement. Finally, the Commissioner contends that substantial evidence supports the ALJ's determination that plaintiff could perform past work.

## VI.     ANALYSIS

The Court will address each of the issues presented by plaintiff in turn.

### A.      Additional Evidence

Plaintiff asserts that the Appeals Council erred in not considering additional medical evidence, namely Dr. Haggerty's treatment records from November 2011 through January 2013, identified as Exhibits 10F, 11F, and 12F. The Court disagrees.

The Appeals Council reviews new evidence pursuant to 20 C.F.R. § 404.970, which states, in relevant part:

> (b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing

12

> decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)).

"[O]n appeal this court still reviews the ALJ's decision rather than the Appeals Council's denial of review." *Hammond v. Apfel*, 211 F.3d 1269, at *3 (6th Cir. 2000). New evidence submitted to the Appeals Council will become part of the administrative record, and if "'the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence.'" *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) (quoting *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)).

Here, the Appeals Council stated that it reviewed Dr. Haggerty's medical records from November 30, 2011, through January 21, 2013, and found that they were "not new because they are exact copies of Exhibits 10F and 12F" [Tr. 2]. Plaintiff argues that the ALJ did not consider exhibits 10F through 12F because the hearing transcript and

13

administrative decision only refer to exhibits through 9F [*See* Doc. 12 p. 1–2]. The Court agrees that it appears the ALJ limited her review to exhibits through 9F [*See* Docs. 22, 25]. However, any error in this regard is harmless.

The Court finds that even if the Appeals Council were incorrect in finding these records to be "exact copies" of exhibits already in evidence, such error is inconsequential because these records are neither new nor material. Pursuant to 20 C.F.R. § 404.970, the Appeals Council will only review new and material evidence that "relates to the period on or before the date of the administrative law judge hearing decision." The administrative hearing occurred on August 9, 2012. Therefore the only records subject to review by the ALJ or the Appeals Council would have been Dr. Haggerty's treatment notes from November 30, 2011, through August 8, 2012. It is clear to the Court that those treatment records were "in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357. Plaintiff's counsel could have easily secured these records prior to the hearing and was given a clear opportunity to inform the ALJ of their existence. Before commencing the hearing, the ALJ asked plaintiff's counsel if he anticipated the addition of any other exhibits, to which plaintiff's counsel responded, "I do not, Your Honor" [Tr. 25]. The Court finds that these records are not new based on plaintiff's failure to supply these records and inform the ALJ of their existence prior to the administrative hearing.

Dr. Haggerty's additional medical records are also immaterial. The Court finds that full consideration of their contents would have had no bearing on the ALJ's

14

determination. The records reflect the same subjective complaints of low back and joint pain seen throughout plaintiff's medical history, and Dr. Haggerty continued plaintiff on a similar course of treatment as prescribed prior to November 2011 [*See* Tr. 308–313, 326–55]. The records do not mention any new impairment, diagnosis, or opinion of functionality, and in fact show improvement. By June 13, 2012, plaintiff reported "adequate pain management" and Dr. Haggerty encouraged plaintiff to "walk daily and establish a regular routine" [Tr. 347].

Further, even if the records subsequent to August 8, 2012, were subject to consideration by the ALJ or Appeals Council, they also show improvement. By January 21, 2013, plaintiff continued to report "adequate pain management[,]" he was assessed with a grossly normal gait and range of motion with no mention of a cane or assistive advice, and he was again encouraged to walk daily [Tr. 373]. Not only are the records absent any new prognosis, they reflect plaintiff's refusal to quit smoking regardless of its effect on his impairments, which the ALJ noted as a factor against plaintiff's credibility [*See* Tr. 332 (Dr. Haggerty noting that plaintiff "continues to smoke without abatement. I reaffirmed the physiologic consequences to his pain management and joint disease"); *see also* Tr. 16 (the ALJ stating that plaintiff "continues to smoke cigarettes against medical advice. The failure of an individual to follow all medical advice zealously suggests his symptoms or limitations may not be as severe as alleged")]. Therefore, the Court finds exhibits 10F through 12F immaterial. The records, if considered, would have had little to no effect on the ALJ's decision, and would likely have only reinforced a finding of "not

15

disabled." Any error on behalf of the Appeals Council in failing to consider Dr. Haggerty's treatment records from November 2011 through August 2012 was harmless.

## B. The Listings

The Court also finds that plaintiff's brief statement alleging his impairments satisfy Listing 1.00 is without merit. As an initial matter, a perfunctory statement is insufficient to set forth a colorable argument and constitutes a waiver of the issue. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

Even if plaintiff's brief reference to the Listings constituted a sufficient argument, such an argument would be without merit. Listing 1.00 is not a listed impairment but the heading under which all specific impairments of the musculoskeletal system fall. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff's only argument is that he satisfies 1.00(B)(2), which is simply a list of definitions entitled "How We Define Loss of Function in These Listings," *see id.*, because "he must use a walker" [Doc. 12 p. 5]. Not only does plaintiff misapply Listing 1.00, his ability to ambulate does not meet the 1.00(B)(2) definition. An "inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the

16

individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)(1). Examples of "ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes[.]" *Id.* at 1.00(B)(2)(b)(2). Plaintiff has failed to demonstrate an "extreme limitation of the ability to walk" or that he "must use a walker." *See id.* at 1.00(B)(2)(b)(1); [Doc. 12 p. 5]. Although Dr. Haggerty prescribed a walker [Tr. 313–14], the record shows that plaintiff did not require a walker or cane to ambulate at all times and sometimes arrived at appointments without an assistive device [*See* Tr. 290]. During these examinations, his ability to ambulate was unchanged [*See id.*]. Further, Dr. Summers noted that plaintiff utilized "the assistance of a single hand cane, but does not appear to be dependent on it" [Tr. 297].

Plaintiff's also fails to satisfy Listing 1.04 *Disorders of the Spine*, which includes in relevant part:

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Primarily, plaintiff fails to show any "medically acceptable imaging" that shows lumbar spinal stenosis. The diagnostic tests performed on September 23, 2010, revealed only "mild degenerative changes" and "mild disc space narrowing at L5-S1" [Tr. 280]. There was "no acute-appearing bony abnormality or bony destructive lesion" [*Id.*]. Plaintiff's ability to ambulate is addressed above. The

17

ALJ determined that plaintiff's degenerative disc disease was a severe impairment [Tr. 12]. However, at step three, the ALJ found that none of plaintiff's physical impairments had the "gravity of symptoms [or] medical documentation in order to establish or even suggest an impairment of listing-level severity" [Tr. 13]. Although the ALJ did not specifically address Listing 1.04 at step three, the Court finds any error in this regard to be harmless. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (finding that "[t]he ALJ did not err by not spelling out every consideration that went into the step three determination"). The ALJ fully assessed plaintiff's degenerative disc disease and ability to ambulate at step four. The ALJ found that the prescription for a walker was entitled to little weight because "Dr. Haggerty himself found no restricted range of motion in his lumbar spine in August 2011" [Tr. 14, 17]. The ALJ further relied on Dr. Summers's analysis that plaintiff "did not appear dependent" on a cane to ambulate [Tr. 14].

In sum, plaintiff's statement that he satisfies a listed impairment is without merit. Plaintiff neglected to make a colorable argument or correctly identify a listed impairment, and he failed to meet his burden of proof that his degenerative disc disease satisfies an impairment under Listing 1.00.

### C. RFC Analysis and Consideration of the Medical Evidence

Next, plaintiff argues that the ALJ erred in his RFC determination by failing to properly weigh the medical evidence. The Court will address plaintiff's treating and non-treating physicians in turn.

18

### 1. The Treating Physician Rule

Under the Social Security Act and its implementing regulations, an ALJ will consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). If the opinion of a treating physician is supported by the record, it is entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating

19

source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. *See* 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the Social Security Administration "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive").

Here, the ALJ's determination that Dr. Haggerty was entitled to less weight is supported by substantial evidence. The ALJ weighed the evidence as a whole and found that the severe limitations in Dr. Haggerty's medical source statement were inconsistent with the record. Upon determining that Dr. Haggerty was not entitled to controlling weight, the ALJ listed the factors in 20 C.F.R. § 404.1527(c)(2-6) and provided "several reasons" for the weight assigned to Dr. Haggerty [Tr. 16–17]. The ALJ found that Dr. Haggerty's finding of severe physical impairments was inconsistent with his own treatment records, specifically noting that Dr. Haggerty found plaintiff had "no restricted range of motion in the lumbar spine in August 2011" [Tr. 17]. The ALJ also considered the length of the treatment relationship and frequency of examinations, finding both to be limited [*Id.*]. Finally, the ALJ considered Dr. Haggerty's training and expertise,

20

distinguishing his specialization in pain management from orthopedics [*Id.*]. The ALJ explained that the "nature of this treatment relationship seems to be superficial pain management through medication; such a nature does not strengthen the supportability of this opinion. Furthermore, the limitations regarding 'no' postural movements of any kind suggests exaggerated limitations" [*Id.*].

Plaintiff argues that Dr. Haggerty's opinion is supported by the record—namely, by the Bearden Healthcare treatment notes on page 275 [*See* Doc. 12 p. 6–7]. But such an argument is without merit. First, an ALJ need not specifically address each medical opinion or piece of evidence in order to adequately consider the record in its entirety. *See Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) ("[T]he fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting *N.L.R.B. v. Beverly Enters.-Mass.*, 174 F.3d 13 (1st Cir. 1999)). Further, the ALJ specifically addressed these records, noting that "claimant sought healthcare at Bearden Healthcare in 2009 and 2010 (Exhibit 2F)," as well as considered the treatment notes that revealed "'mild' degenerative disease and 'mild' disc space narrowing" [*See* Tr. 14]. Therefore, the Court finds that the ALJ properly considered the medical evidence in weighing Dr. Haggerty's opinion.

Plaintiff relies on *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 378 (6th Cir. 2013), to show that the ALJ erred in applying the treating physician rule [*See* Doc. 12 p. 9]. Specifically, plaintiff directs the Court to the rule that a treating physician

21

is subject to controlling weight if "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)). Yet the Court has already applied this rule. Contrary to *Gayheart*, where the court found that the ALJ focused "on isolated pieces of the record," 710 F.3d at 378, the ALJ in this case weighed the evidence in its entirety. The ALJ addressed plaintiff's entire medical record, diagnostic test results, subjective complaints, and daily activities and determined that Dr. Haggerty's opinion was overly restrictive and inconsistent with the evidence [*See* Tr. 14-17]. Accordingly, the Court finds that the ALJ's assessment is based on substantial evidence and that she adhered to agency procedure in deciding that Dr. Haggerty's opinion was not entitled to controlling weight.

## 2. Non-Treating Physicians

The Court finds that the ALJ properly considered the opinions of the non-treating physicians. Although an ALJ is "not bound by any findings" made by non-treating physicians, the ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). The ALJ must evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2-6), the same factors used to analyze the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(e)(2)(iii); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 710

22

(6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at \*6 (E.D. Tenn. Dec. 17, 2010) (internal citations omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)).

The ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled. 20 C.F.R. § 404.1527(b). However, as explained above, an ALJ need not specifically address each piece of evidence to adequately consider the record in its entirety. *See Loral Def. Sys.-Akron*, 200 F.3d at 453.

Here, the ALJ noted Dr. Summers's assessment that Plaintiff would "'have difficulty' bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting no more than twenty pounds" [Tr. 17]. The ALJ stated that she assigned Dr. Summers "significant weight because this physician examined the claimant personally, and this opinion is consistent with those objective findings during the exam" [*Id.*]. The ALJ explained that Dr. Summers, as a "third party objective observer," was "less likely to

give undue weight to the claimant's subjective complaints of pain or other symptoms than a treating physician might be" [*Id.*].[1]

Next, the ALJ addressed Dr. Turner's RFC analysis and found her opinion entitled to "some weight because this physician referenced the objective evidence" [*Id.*]. The ALJ, however, declined to adopt Dr. Turner's RFC limitations and gave her opinion "less weight insofar as it is inconsistent with the residual functional capacity because this physician did not examine the claimant personally" [*Id.*].

The Court finds that the ALJ's consideration of the medical evidence satisfies the criteria set forth in 20 C.F.R. § 404.1527. Plaintiff takes issue with the ALJ's analysis, arguing that she failed to address various inconsistencies or specific pages of the record and neglected to walk through each factor in 20 C.F.R. § 404.1527(c) [*See* Doc. 12 p. 7–8, 14–15]. Yet the ALJ is not required to specifically note each piece evidence or address every factor in 20 C.F.R. § 404.1527(c). *See Klimas v. Comm'r of Soc. Sec.*, No. 1:10–cv–666, 2012 WL 691702, at *1 (W.D. Mich. Mar. 1, 2012) ("The ALJ is not required, however, to explicitly discuss each of the § 404.1527 factors. Instead, the record must reflect that the ALJ considered those factors relevant to his assessment.") (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) and *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007)); *Paseka v. Comm'r of Soc. Sec.*, No. 1:09–CV–1073, 2011 WL 883701, at *1–2 (W.D. Mich. Mar. 11, 2011). The ALJ applied several of the factors

---

[1] Although the Court does not adopt (or necessarily agree) with this rule, the Court finds any error in the ALJ's inclusion of this statement to be harmless as her overall consideration of the medical evidence satisfies 20 C.F.R. § 404.1527 and is supported by substantial evidence.

listed in 20 C.F.R. § 404.1527(c)(2-6), specifically the treatment relationship, frequency of examination, and consistency of the opinion with the record as a whole.  Further, as explained above, the ALJ considered plaintiff's entire medical record, diagnostic test results, subjective complaints, and daily activities.  Therefore, the Court finds that the ALJ properly adhered to agency procedure in weighing the medical evidence.

### D. RFC Assessment and Past Relevant Work

The Commissioner argues that the ALJ's determination that plaintiff can perform past relevant work is supported by substantial evidence.  The Court concurs but takes note of a discrepancy between plaintiff's RFC and the ALJ's findings of fact.  *See Simpson v. Colvin*, 3:11-0481, 2013 WL 4456383, at *17 (M.D. Tenn. Aug. 16, 2013) (internal citations omitted) (stating that, in determining a claimant's RFC, the ALJ must "make findings of fact" as to a claimant's functional and physical limitations).  The ALJ determined that plaintiff had the RFC to perform light work "except the claimant *can* perform *frequent* climbing, balancing, stooping, kneeling, crouching and crawling" [Tr. 13 (emphasis added)].  In her findings of fact, however, the ALJ assigned significant weight to Dr. Summers's assessment that plaintiff would "'have difficulty' bending, stooping kneeling, squatting, crouch[ing], crawling, climbing or lifting greater than 20 pounds" [Tr. 17 (granting Dr. Summers's "opinion significant weight because this physician examined the claimant personally, and this opinion is consistent with those objective findings during the exam")].

25

Not only did the ALJ specifically state that she gave Dr. Summers's postural limitations significant weight, she granted only "some weight" to Dr. Turner's opinion that plaintiff could frequently climb, balance, stoop, kneel, crouch and crawl "because this physician referenced the objective evidence. The evidence shows 'mild' degenerative disc disease. The record shows the claimant used a cane in July 2011 at a treatment visit, but he did not need the cane in the opinion from the consultative physician" [*Id.*[2]]. The ALJ then went on to address plaintiff's RFC at step five, noting that his "additional *limitations* have little or no effect on the occupational base of unskilled light work" [Tr. 18 (emphasis added)].

The Court finds this statement curious as the RFC does not attach "additional limitations," but instead provides that plaintiff can perform a full range of light work with "frequent climbing, balancing, stooping, kneeling, crouching and crawling" [Tr. 13]. Light work does not require or include such frequent postural limitations. *See* 20 C.F.R. § 416.967(c) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."); *see also* S.S.R. 83-14, 1983 WL 31254, at *4 (S.S.A. January 1, 1983) ("[T]he frequent lifting or carrying of objects weighing up to 10 pounds (which is

---

[2] The Court finds it noteworthy that Dr. Summers is the referenced "consultative physician."

required for the full range of light work) implies that the worker is able to do *occasional* bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist.") (emphasis added).

Therefore, the Court finds that the ALJ's RFC "limitation" stating that plaintiff can perform light work "except the claimant *can* perform frequent climbing, balancing, stooping, kneeling, crouching and crawling" [Tr. 13 (emphasis added)], is a typographical error. The Court believes the ALJ meant to state that either plaintiff "can *not* perform frequent" or "can perform *occasional*" climbing, balancing, stooping, kneeling, crouching and crawling [*See id.*]. Either way, the RFC as written does not contain a limitation and does not match Dr. Summers's assessment, which the ALJ granted significant weight. In fact, the RFC as written allows plaintiff to perform postural limitations above the requirements of light work. *See* 20 C.F.R. § 416.967(c). Because the ALJ's findings of fact clearly demonstrate that she adopted Dr. Summers's assessment and meant to attach additional limitations, the Court finds that the ALJ's RFC was in error [*See* Tr. 17 (granting Dr. Summers's assessment significant weight); Tr. 18 (addressing plaintiff's RFC at step five, noting that his "additional limitations have little or no effect on the occupational base of unskilled light work")]. The Court finds that substantial evidence supports a finding that plaintiff would have difficulty climbing, balancing, stooping, kneeling, crouching, and crawling, and it is unconvinced that the record supports a finding to the contrary.

However, the Court finds this error harmless. Regardless of whether plaintiff could perform "frequent climbing, balancing, stooping, kneeling, crouching and crawling" [Tr. 13], his ability to perform such postural limitations would have no effect on the ultimate determination of "not disabled." The criterion for an assistant apartment manager does not require any of these postural manipulations. *See* DOT 186.167-018 Manager, Apartment House, DICOT 186.167-018 (listing requirements for climbing, balancing, stooping, kneeling, crouching, or crawling as "[a]ctivity or condition does not exist"). Further, plaintiff submitted a work function report stating that his previous employment as an assistant apartment manager consisted of "doing paperwork – collecting rent – show apartment to new prospective renters – answer the phone and direct maintenance men to problems on property" [Tr. 119]. He reported that this work did not entail "any lifting or carrying" and required him to walk and stand for only one hour a day and sit for six [*Id.*]; *see also* S.S.R. 82-62, 1982 WL 31386, at *3 (S.S.A. 1982) ("The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.").

Therefore, regardless of the discrepancy between the RFC and the ALJ's findings of fact, the outcome of the decision would be unchanged, making remand inappropriate. *See Tobey v. Comm'r of Soc. Sec.*, No. 11-15069, 2013 WL 1010727, at *11 (E.D. Mich. Feb. 22, 2013) (internal citations omitted) (affirming the ALJ's decision regardless of error because "there is no evidence that such further analysis would change the case's

28

outcome, and plaintiff's claim of error should be denied"); *Austin v. Astrue*, 2012 WL 1970227, at *9 (E.D. Mich. Mar. 19, 2012) (finding that remand was "not required here because the ALJ's decision provides a sufficiently detailed analysis to allow the reader to follow his decision, and to know that remand . . . would not change the case's outcome.); *Miller v. Comm'r of Soc. Sec.*, 2009 WL 997312, at *3 (E.D. Mich. Apr. 14, 2009) (declining remand regardless of error in the RFC analysis because it would not "have made any difference").

The ALJ's determination that plaintiff can perform past relevant work is supported by substantial evidence, regardless of any error in plaintiff's RFC. The Court notes that remand would be appropriate had the ALJ failed to thoroughly consider the medical evidence or to correctly address the treating physician rule, or otherwise deprived plaintiff of a substantial right. *See Wilson*, 378 F.3d at 546–47 (stating that a procedural lapse "will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses"). Yet as explained above, this is not the case. Although the Court urges more caution and clarity in the future, the Court is able to determine the basis of the ALJ's decision that plaintiff can perform past relevant work and finds that regardless of her RFC error, substantial evidence supports such a finding. The Court finds that any error in plaintiff's RFC did not prejudice plaintiff as remand would have no effect on the ultimate outcome and only serve to unduly delay resolution of this matter.

# VII. CONCLUSION

Based upon the foregoing, plaintiff's Motion for Summary Judgment [Doc. 10] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [Doc. 13] will be **GRANTED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE